IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

STEVEN ALEXANDER WEINERT,

      **Plaintiff,**

v.

PUSHMATAHA COUNTY MUNICIPAL
DISTRICT, BJ HEDGECOCK and
AMANDA RODEN,

      **Defendants.**

Case No. 23-CV-330-RAW-JAR

**OPINION AND ORDER**

This civil rights action, brought pursuant to 42 U.S.C. § 1983, is before the court on Defendants Pushmataha County Municipal District, BJ Hedgecock and Amanda Roden's ("Defendants") Motion to Dismiss ("Motion"). Dkt. No. 57. The court has before it for consideration Plaintiff's Amended Complaint [Dkt. No. 43], Defendants' Motion [Dkt. No. 57], Plaintiff's Response [Dkt. No. 59] and Defendants' Reply [Dkt. No. 67]. After careful review, the court finds the Motion should be **granted**. Further, Plaintiff's pending motions [Dkt. Nos. 45, 54, 60, 61 and 64] should be **denied**.

    **I.**    **Background**

Plaintiff is a pro se pretrial detainee who is incarcerated at the LeFlore County Detention Center in Poteau, Oklahoma. He filed this civil rights complaint pursuant to 42 U.S.C. § 1983, seeking relief for alleged constitutional violations at the Pushmataha County Jail in Antlers, Oklahoma. Dkt. No. 43. Plaintiff contends Defendants committed the following constitutional violations: 1) denial of access to news material; 2) denial of access to courts; 3) failure to provide a safe living environment; 4) imposition of excessive bond and fines; and 5) "redress of grievances – due process clause – cruel punishment." Dkt. No. 43. Defendants responded by way of their

Motion arguing dismissal is appropriate because Plaintiff has not properly named the county; Defendants Hedgecock and Roden have not been properly served, Defendant Roden does not have an official capacity, Plaintiff has failed to state a claim, and Defendants Hedgecock and Roden are entitled to qualified immunity. *See* Dkt. No. 57. Accordingly, Defendants' position is that Plaintiff's entire Amended Complaint must be dismissed.

## II.  Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should be dismissed for failure to state a claim upon which relief can be granted "only when it appears that the plaintiff can prove no set of facts in support that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)). When determining whether to grant a motion to dismiss, the district court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. *Jojola v. Chaves,* 55 F.3d 488, 494 (10th Cir. 1995).[1] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs*, 336 F.3d at 1201 (internal quotations and citations omitted).

A request for dismissal pursuant to Rule 12(b)(6) requires the court to determine whether

---

[1] Throughout his Response, Plaintiff invites the court to consider his original complaint and supplemental filings. *See e.g.,* Dkt. No. 59 at 6. The court declines Plaintiff's invitation, and, consistent with the Tenth Circuit's instructions, evaluates the sufficiency of the Amended Complaint based upon the allegations contained within its four corners. Furthermore, Plaintiff was previously instructed that his amended complaint would "completely replace[]" his original complaint and the amended complaint "must include all claims and supporting material[.]" Dkt. No. 31 at 8-9.

the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court is required to exercise a liberal interpretation of Plaintiff's pleadings, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), the court need not assume the role of advocate for Plaintiff, and he must present more than conclusory allegations to survive a motion to dismiss for failure to state a claim, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Id.* (citing cases). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

### III. Individual Capacity Claims against Defendants Hedgecock and Roden

In his Amended Complaint, Plaintiff does not articulate in what capacity, individual or official, he is suing Defendants Hedgecock and Roden. *See* Dkt. No. 43. However, in his Response, Plaintiff clarifies he "obviously sues the individual and official capacities." Dkt. No. 59 at 1.[2] Therefore, the court will address Plaintiff's claims against Defendants Hedgecock and Roden in both capacities and begins with the claims against them individually.

#### A. Claim 1: Access to News Materials

By way of his first claim, Plaintiff alleges, "BJ Hedgecock and Amanda Roden did not provide any means to read or view news material to jail while acting as sheriff and administrator[.] Pushmataha County also did not provide the same during those periods in which I was being held

---

[2] The court's citations refer to the CM/ECF header pagination.

3

at that facility without access to media." Dkt. No. 43 at 5. Plaintiff claims this conduct amounted to a violation of his First Amendment right to receive information while in prison. *Id.* Defendants counter Plaintiff's allegations are vague, conclusory and fail to demonstrate personal participation by either Defendant. *See* Dkt. No. 57 at 17-18.

Plaintiff does "have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or legitimate penological objectives of the prison." *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004); *see also Khan v. Barela,* 808 F. App'x 602, 606-07 (10th Cir. 2020) (unpublished)[3] (applying the *Jacklovich* rule to a pretrial detainee's § 1983 claim that defendants deprived him of his First Amendment free-speech right to read hardcover books, newspapers and newspaper clippings) . However, Plaintiff "must include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." *Gee v. Pacheco,* 627 F.3d 1178, 1188 (10th Cir. 2010) (emphasis in original). An inmate need not "identify every potential legitimate interest and plead against it." *Id.* But he must "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Id.* Here, Plaintiff has failed to allege sufficient facts to support a plausible inference that the actions of which he complains were not reasonably related to legitimate penological interests.

Additionally, "[i]n order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). Plaintiff must "identify *specific* actions taken by *particular* defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (quoting

---

[3] The court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

4

*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 2011)).  Plaintiff's allegations relating to this claim are devoid of any personal participation by either Defendant Hedgecock or Defendant Roden.  Accordingly, this claim is dismissed.

### B.  Claim 2:  Access to Courts

Next, Plaintiff alleges,

> BJ Hedgecock, Amanda Roden and Pushmataha County failed to provide access to law library prior to preliminary hearing in criminal case CF-23-42 causing lack of knowledge of state statute which would have allowed objection to hearing being continued and having subpoenas issued.  This caused case to be bound over for trial rather than dismissed.

Dkt. No. 43 at 5.  Defendants retort Plaintiff failed to allege sufficient personal participation and failed to allege sufficient facts to state a plausible claim.  *See* Dkt. No. 57 at 18-19.

It is undisputed that access to the courts is a constitutional right.  *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *see Friedman v. Kennard*, 248 F. App'x 918, 921 (10th Cir. 2007) (unpublished) ("Pretrial detainees have a constitutional right to adequate, effective, and meaningful access to the courts.").  Inmates, however, do not have "an abstract, freestanding right to a law library[.]" *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  To have standing to raise a claim of denial of access to the courts, a prisoner must demonstrate actual injury.  *Id.* at 350-51.  "To do so, he must show that any denial or delay of access to the court prejudiced him in pursuing litigation."  *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996).

Here, Plaintiff's claim fails for several reasons.  First, Plaintiff fails to provide sufficient factual allegations to support his claim.  Plaintiff does not indicate the date of the preliminary hearing, what, if any, access he was provided and does not articulate how failing to object to a continuance of a preliminary hearing and not having subpoenas issued caused him to be bound over for trial.  Plaintiff has failed to demonstrate that the alleged denial of access to a law library

caused him an actual injury.

Second, Plaintiff does not "make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations[.]" *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original). Simply alleging all three defendants "failed to provide access to law library" is insufficient.

Finally, it is notable that in the underlying state court case, Plaintiff elected to proceed pro se and the district court appointed Oklahoma Indigent Defense System ("OIDS") as standby counsel. *See* Court Minute, *Oklahoma v. Weinert,* No. CF-2023-42 (Pushmataha Cnty. Dist. Ct. August 23, 2023).[4] The Tenth Circuit has noted, "while prisoners … have a right to adequate, effective and meaningful access to the courts, access to a law library is only one of many constitutionally acceptable methods used to assure meaningful access to the courts." *United States v. Taylor,* 183 F.3d 1199, 1204 (10th Cir. 1999). "It is well established that providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library." *Id.*; *see also Ray v. Harris,* No. 09-CV-077-FHS-SPS, 2011 WL 4424815, at *1 (E.D. Okla. Sep. 21, 2011) (relying on *Taylor* to dismiss § 1983 plaintiff's access to court claim wherein plaintiff had appointed counsel). For all of these reasons, this claim is dismissed.

### C. Claim 3: Safe Living Environment

Plaintiff next alleges the Defendants' actions constitute "cruel and unusual punishment" in violation of the Eighth Amendment. Dkt. No. 43 at 6. Specifically, Plaintiff alleges:

> Pushmataha County, BJ Hedgecock and Amanda Roden failed to provide plaintiff

---

[4] The court may consider matters of public record, such as records from Plaintiff's Pushmataha County criminal case (CF-2023-42), by taking judicial notice of such documents, without converting the motion to dismiss into a motion for summary judgment. *Tal v. Hogan,* 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

> with safe living environment. Jail does not provide adequate nutrition and uses meals as form of punishment. Rusty and unhygienic conditions present risk of infectious disease. They also failed to provide adequate outdoor recreation or means of physical exercise. This caused extreme emotional distress, especially so due to plaintiff's PTSD.

*Id.* Defendants respond this claim is likewise vague and undeveloped. Dkt. No. 57 at 20. Defendants also contend Plaintiff has failed to allege he suffered any physical injury as a result of the conditions, and the alleged emotional distress is not actionable. *Id.*

To the extent Plaintiff specifically invokes the Eighth Amendment in claiming the conditions of his confinement amounted to cruel and unusual punishment, his claim fails. Plaintiff was a pretrial detainee at the time of the incidents giving rise to his claims. Dkt. No. 43 at 2. The Eighth Amendment's protections are not applicable to pretrial detainees. *See Colbruno v. Kessler,* 928 F.3d 1155, 1162 (10th Cir. 2019); *See.*

Nonetheless, as mentioned, pretrial detainees enjoy at least the same protections as a convicted criminal. *Wolfish,* 441 U.S. at 545. The conditions of a pretrial detainee's confinement are constitutionally protected under the Due Process Clause of the Fourteenth Amendment. *See Colbruno,* 928 F.3d at 1162. Pretrial detainees "cannot be punished at all," let alone in a cruel and unusual manner. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). The government "may subject [a pretrial detainee] to the restrictions and conditions of the detention facility [only] so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Wolfish*, 441 U.S. at 536–37. To determine if a pretrial detainee has been subjected to punishment, "we must ask whether an expressed intent to punish on the part of the detention facility officials exists. If so, liability may attach. If not, a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective." *Blackmon v. Sutton,* 734 F.3d 1237, 1241 (10th Cir. 2013)

(citation and internal quotation marks omitted).

Here, Plaintiff has not provided sufficient factual information to show any alleged deprivation or condition was intended as punishment. Nor has Plaintiff shown the alleged restrictions bear no reasonable relationship to any legitimate governmental objective. Plaintiff also fails to demonstrate how both Defendant Hedgecock and Defendant Roden personally participated in the alleged deprivation and/or conditions. The Amended Complaint is completely devoid of any specific action or inaction by Defendants Hedgecock and Roden. It follows that this claim must also be dismissed.

### D. Claim 4: Imposition of Excessive Bond and Fines

In his fourth claim, Plaintiff alleges:

Pushmataha County, BJ Hedgecock and Amanda Roden held plaintiff in lieu of $500,000 then $300,000 bond throughout the time period stated with the alleged objective being to hold him for trial. On 01-30-04 Amanda Roden made him sign a PR bond 1 day before scheduled pre-trial and 13 days before scheduled trial thereby showing that bond was excessive & that bond was not being used for that purpose. On 01-30-24 Defendants attempted to charge Plaintiff over $7,000 for 'rent' while not allowing him to earn wages which impose excessive fines without conviction.

Dkt. No. 43 at 6. Defendants respond Plaintiff has failed to sufficiently allege personal participation and that neither individual defendant set the amount of Plaintiff's bond. Dkt. No. 57 at 20. Defendants further respond the alleged $7,000 rent assessment is an incarceration fee that is authorized pursuant to state statute, and it is not collectible unless and until Plaintiff is convicted or receives a deferred sentence. *Id.* at 21. Defendants conclude this claim is likewise subject to dismissal.

First, concerning Plaintiff's allegation of excessive bond, Plaintiff included all three (3) named defendants, and he fails to allege any facts demonstrating Defendant Hedgecock personally participated in setting the appearance bond. To the extent Plaintiff's contention that "Amanda

8

Roden made him sign a PR bond 1 day before scheduled pre-trial" amounts to personal participation in Plaintiff's excessive bond claim, this allegation is undermined by the fact, which this court appropriately takes judicial notice, that the district court, not Amanda Roden, set Plaintiff's bond. *See* Court Minute, *Weinert,* No. CF-2023-42 (Pushmataha Cnty. Dist. Ct. July 26, 2023). Therefore, Plaintiff's claim of excessive bond is dismissed.

To the extent Plaintiff claims he incurred excessive fines, this claim likewise fails. First, Plaintiff has failed to sufficiently allege personal participation by either Defendant Hedgecock or Defendant Roden in setting Plaintiff's incarceration costs. Second, a review of the state court record reveals no incarceration costs have been ordered as Plaintiff has not been convicted or received a deferred sentence. *See Weinert,* No. CF-2023-42; *see also* Okla. Stat. tit. 22, § 979a(A) ("The court shall order the defendant to reimburse all costs of incarceration, upon conviction or upon entry of a deferred judgment and sentence …."). For these reasons, Plaintiff's claim of an excessive fine likewise must be dismissed.

### E. Claim 5: Redress of Grievances – Due Process Clause – Cruel Punishment

Plaintiff's fifth and final claim alleges:

Pushmataha County, BJ Hedgecock & Amanda Roden deprived the plaintiff of his liberty and punished him, without and/or prior to him being duly convicted of a crime by holding him at the county jail during time period stated above. He was held with tribal inmates whom were being punished for crimes in which they were convicted. Defendants failed to establish any written disciplinary or grievance policy which allowed plaintiff to be locked down as a collective punishment for actions of other inmates, and does not allow petition for redress of grievances. Grievances that were filed were neither denied or redressed, just simply not answered.

Amanda Roden, shortly after filing of original complaint, actually locked plaintiff down after stating, "O, you want to sue the jail" prior to slamming his bean hole and then locking him down. Even if policy was established the defendants consistently did not or retaliated for the use of it.

All of the facts within the claims evidence that no government objective, other than

9

> punishment of the plaintiff existed.  He was held 197.63 days being punished while presumed innocent, also being held in lieu of excessive bond then given OR bond one day before pretrial and thirteen days before trial.

Dkt. No. 43 at 9-10.  Defendants respond these allegations "make[] very little sense" and are "so vague and undeveloped" that Plaintiff fails to state a claim upon which relief can be granted.  Dkt. No. 57 at 21-22.

As to Plaintiff's challenge to being held at the county jail prior to his conviction, this claim fails because Plaintiff did not sufficiently allege personal participation by either Defendant Hedgecock or Defendant Roden.  Furthermore, "[c]hallenges to the fact of … confinement or the duration of confinement are cognizable only under the habeas statutes[.]" *Woodruff v. Everett,* 43 F. App'x 244, 245 (10th Cir. 2002) (unpublished) (citing *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) and *Preiser v. Rodriguez*, 411 U.S. 475, 488-99 (1973)); *see Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007) ("[Section] 2241 is the proper avenue by which to challenge pretrial detention.").

Plaintiff's challenge to being held with convicted, tribal inmates fails to demonstrate he was held with tribal inmates as a form of punishment.  *See Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1106 (10th Cir. 2005).  Only if the act of assigning housing for a detainee is done with an intent to punish or is not reasonably related to a legitimate governmental goal, does that act become unconstitutional.  *Id.*  Plaintiff's conclusory allegation that "[a]ll of the facts within the claims evidence that no government objective, other than punishment of the plaintiff existed" is insufficient to establish Plaintiff's housing assignment was imposed only for the purpose of punishment. Dkt. No. 43 at 9-10.  This claim must be dismissed.

Plaintiff's claim concerning lock down procedures at the jail is vague and conclusory, and the allegations fail to provide sufficient facts to state a claim for relief.  To the extent his claim is

premised upon a lack of grievance procedure, this claim fails. The Tenth Circuit has determined that prison grievance procedures do not create a protected liberty interest and, therefore, do not implicate due process rights under the Fourteenth Amendment. *Murray v. Albany Cnty. Bd. of Cnty. Comm'rs*, 211 F.3d 1278 at *2 (10th Cir. Apr. 20, 2000) (unpublished table decision) ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'" (internal citation and quotation omitted)); *Boyd v. Werholtz,* 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished) ("[T]here is no independent constitutional right to state administrative procedures."). "Instead, [w]hen the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Id.* (citation and internal quotation marks omitted). As evidence by the instant Complaint, Plaintiff was able to file this action in this court. He, therefore, has failed to state a valid claim for relief. Thus, Plaintiff's claim premised upon the grievance procedure, or lack thereof, at the county jail must be dismissed.

The court understands Plaintiff's final allegation to be that Defendant Roden retaliated against him for filing the instant action. Dkt. No. 1 at 9. Defendant Roden did not address this allegation in the Motion to Dismiss. *See* Dkt. No. 57 at 21-23. It is true "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights.... [A]n inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1263–64 (10th Cir. 2006) (emphasis in original) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir.1998)); *see also Allen v. Avance,* 491 F. App'x 1, *5 (10th Cir. 2012) (unpublished) (applying *Peterson* rule to pretrial detainee's retaliation claim). To prove Defendant Roden's liability for

11

retaliation, Plaintiff is required to show: (1) he was engaged in a constitutionally protected activity; (2) Defendant Roden caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) Defendant Roden's action "was substantially motivated as a response to [Plaintiff's] exercise of constitutionally protected conduct." *Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir. 2007). Furthermore, "it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role." *Peterson,* 149 F.3d at 1144.

Plaintiff engaged in constitutionally protected activity by filing the original complaint thereby satisfying the first *Shero* element. Regarding the second element, Plaintiff does not allege sufficient facts to plausibly show Defendant Roden's actions caused him an injury that would chill a person of ordinary firmness from continuing to initiate litigation. Here, all Plaintiff has alleged is that he was placed on "lockdown" for an unspecified amount of time. Dkt. No. 1 at 9. Plaintiff does not provide any details concerning the nature of the lockdown. *Id.*

In *Rochas v. Zavaras,* the plaintiff alleged in retaliation for informal complaints he made he was placed on "Restricted Privilege" status which entailed being "restricted to standard recreation activities, maintained in segregated housing, called last to eat, restricted from certain purchases from the canteen, prohibited from communicating with other inmates and required to wear distinct identifying clothing." 443 F. App'x 316, 317 (10th Cir. 2011) (unpublished). The Tenth Circuit held the plaintiff "failed to allege facts necessary to support the element that any defendant's actions 'would chill a person of ordinary firmness from continuing to' file grievances or exercise a constitutional right." *Id.* at 319.

Relying on *Rochas*, one district court held that plaintiff's allegation that his cell was searched, his papers were confiscated, and he was repeatedly placed on lockdown was insufficient

12

to state a plausible retaliation claim. *Fleming v. Clark,* No. 09-CV-1038-DAK, 2012 WL 4343836, at *6 (D. Utah Sep. 21, 2012). The *Fleming* Court found, "Plaintiff [sic.] allegations do not show that Defendants did anything that would chill an inmate of ordinary firmness from continuing to file grievances or lawsuits." *Id.* Another district court, relying on *Rochas,* concluded that being issued an "immediate disciplinary detention" which "restricted [plaintiff] to his bunk and prevented him from using the recreation room and day room for three days" failed to "allege sufficient facts to plausibly show that [defendant's] actions caused [plaintiff] injury that would chill a person of ordinary firmness from continuing to file prisoner grievances." *Ferguson v. Clifton*, No. 18-CV-931-CMA, 2019 WL 983491, at *4 (D. Colo. Feb. 7, 2019) *report and recommendation adopted*, 2019 WL 979014, at *1 (D. Colo. Feb. 28, 2019). The *Ferguson* Court noted, "limiting an inmate's privileges is not a sufficiently serious consequence to have the requisite chilling effect." *Id.* "These are the precise type of restricted privileges that the Tenth Circuit has held do not create the required chilling effect to support a First Amendment retaliation claim." *Id.*

Based on the allegations before the court, the most the court can infer is that Plaintiff's privileges were restricted in an unknown manner for an unknown amount of time. As alleged, the court cannot conclude Plaintiff has sufficiently alleged he suffered an injury that would chill a person of ordinary firmness from continuing to file lawsuits. Therefore, Plaintiff has failed to allege sufficient facts to support his retaliation claim against Defendant Roden, and this claim must be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

### F. Qualified Immunity

Both Defendants Hedgecock and Roden assert they are entitled to qualified immunity. *See* Dkt. No. 57 at 19-30. "If a plaintiff fails to state a valid claim, we need not even reach the issue

of the qualified immunity defense." *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995). Since the court concludes Plaintiff failed to state a valid claim showing a deprivation of his constitutional rights, the court will not address the issue of qualified immunity.

### IV.    Official Capacity Claims Against Defendant Roden

As noted previously, Plaintiff contends he is suing Defendant Roden in her official capacity as well. *See* Dkt. No. 59 at 1. Plaintiff identifies Defendant Roden as the "Jail Administrator Pushmataha County Jail[.]" Dkt. No. 43 at 4. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985). For this to occur, however, the officer must have final policymaking authority. *See Milligan-Hitt v. Bd. of Trustees of Sheridan Cty. Sch. Dist. No. 2*, 523 F.3d 1219, 1223-24 (10th Cir. 2008). "[W]hether a particular official has 'final policymaking authority' is a question of *state law*." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (citations omitted) (emphasis in original).

Under Oklahoma law, the jail administrator does not set the policies or procedures for the Pushmataha County Jail. Instead, the sheriff has charge of the county jail and its prisoners. Okla. Stat. tit. 19, § 513; Okla. Stat. tit. 57, §§ 47, 52; *see also Lopez v. LeMaster,* 172 F.3d 756, 763 (10th Cir. 1999) ("Under Oklahoma law, a county sheriff is in charge of the jail and the prisoners therein."). Therefore, Defendant Roden has no official capacity with regard to the Pushmataha County Jail. *Mouton v. Gold,* No. 06-CV-550-RAW-SPS, 2009 WL 2900309, at *3 (E.D. Okla. Sep. 9, 2009) (dismissing official capacity claim against jail administrator); *Logan v. Regalado,* No. 20-CV-303-GKF-FHM, 2021 WL 819106, at *3 (N.D. Okla. Mar. 3, 2021) (same). Plaintiff's claims against Defendant Roden in her official capacity must be dismissed.

## V.     Official Capacity Claims Against Defendant Hedgecock

As noted, a claim against a state actor in his official capacity, such as Defendant Hedgecock, "is essentially another way of pleading an action against the county or municipality" he represents, and is considered under the standard applicable to § 1983 claims against municipalities or counties. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). In *Monell*, the Supreme Court held that municipalities and other local governmental bodies are "persons" within the meaning of § 1983, and that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. at 694. Thus, in order to establish *Monell* liability, a plaintiff "must prove [an] (1) official policy or custom[,] (2) causation, and (3) state of mind." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1239 (10th Cir. 2020) (internal citations and quotations omitted). In other words, "[a] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).[5]

Moreover, a municipality may only be held liable for its own illegal acts and cannot be held vicariously liable for its employees' actions. *Id.* For Defendant Hedgecock to be held liable in his official capacity, Plaintiff must establish that "(1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the

---

[5] The Tenth Circuit has recognized that, "[i]n most cases, ... the question of whether a municipality is liable [is] dependent on whether a specific municipal officer violated an individual's constitutional rights," but "a limited exception" exists "where the alleged violation occurred as a result of multiple officials' actions or inactions." *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1191 (10th Cir. 2020). Thus, "where 'the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights.'" *Id.* at 1186 (quoting *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 310 (10th Cir. 1985)). Plaintiff does not allege this exception applies and, therefore, the court need not consider it.

constitutional deprivation." *Walker v. City of Orem*, 451 F.3d 1139, 1152 (10th Cir. 2006). The absence of a constitutional violation by the officers of a municipality precludes a finding of liability against the municipality itself. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).

Here, as explained above, there is no underlying constitutional violation by any officer. Nor, beyond a passing reference to a policy [*See* Dkt. No. 43 at 9], has Plaintiff sufficiently alleged the existence of a municipal policy or custom that was the moving force behind any alleged deprivations. Therefore, the claims against Defendant Hedgecock in his official capacity must be dismissed.

## VI. Claims Against Defendant Pushmataha County Municipal District

Lastly, Plaintiff asserts each claim against Defendant "Pushmataha County Municipal District" ("County"). *See* Dkt. No. 43. Defendant County contends dismissal is appropriate because the county has been improperly named. *See* Dkt. No. 57 at 10-12. The right to sue a county in the State of Oklahoma is purely statutory, and the mode prescribed by statute for prosecuting actions against a county must be strictly followed. *Smith v. State*, 166 P. 463, 464 (1917). The statutory procedure for naming a county as a defendant is found at Okla. Stat. tit. 19, § 4, which specifically provides that, "In all suits ... against a county, the name in which a county shall ... be sued shall be, 'Board of County Commissioners of the County of _____....'" The Supreme Court of Oklahoma has stated that "[t]his statute is mandatory and requires that all suits prosecuted by or against a county be prosecuted in the name of the board of county commissioners of the county in interest." *Green Constr. Co. v. Okla. Cnty.*, 50 P.2d 625, 627 (Okla. 1935). Therefore, the Board of County Commissioners of the County of Pushmataha would be the properly named party. Because Plaintiff named an improper party, no valid summons could be issued to or served on the county. *Id.* Furthermore, any summons issued and served did not confer

jurisdiction over the county. *Id.* It follows, Defendant County is entitled to dismissal from this action. *See Cash v. Murphy,* No. 14-CV-245-JHP-SPS, 2016 WL 6078334, at *5 (E.D. Okla. Oct. 17, 2016) (dismissing improperly named county from suit).

Further, even if the County were a properly named party to this suit, Plaintiff's claims against it still fail. As explained above, "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton*, 997 F.2d 774, 782 (10th Cir. 1993). Plaintiff has not plausibly pled a deprivation of his constitutional rights by any individual which would support a municipal liability claim. *See Martinez v. Sequoyah Cnty. Crim. Just. Auth.,* No. 21-CV-84-TDD, 2022 WL 19377, at *6 (E.D. Okla. Jan. 3, 2022) (noting that "since the Court has found that Plaintiff's First Amended Complaint fails to plausibly plead deprivations of [Plaintiff's] constitutional rights by any individual, the Court must, necessarily, find that Plaintiff's § 1983 municipal liability claim fails[]" and dismissing Plaintiff's § 1983 claims against county defendants). Nor has Plaintiff plausibly pled the existence of any policy or custom which caused the alleged injury. Therefore, Plaintiff's claims against Defendant County must be dismissed.

### VII.     Plaintiff's Pending Motions

Since the filing of the Amended Complaint, Plaintiff has filed numerous motions for various relief. *See* Dkt. Nos. 45, 54, 60, 61 and 64. The court has reviewed the motions and finds that they lack merit.

Plaintiff's request to expunge his unidentified prior convictions [Dkt. No. 45] is **DENIED** as he cannot seek to have his state convictions set aside through a civil rights lawsuit. *Woodruff,* 43 F. App'x at 245 ("[c]hallenges to the fact of conviction … are cognizable only under the habeas statutes").

Plaintiff's Motion for Default Judgment [Dkt. No. 54] is **DENIED** because a review of the record reveals Defendants timely responded to the Amended Complaint in accord with Rule 12(a)(1)(A)(i).

Plaintiff's Motion for Appointment of Counsel and Class [Dkt. No. 60] is **DENIED** as Plaintiff has failed to establish this is the type of exceptional case warranting the request of voluntary assistance of counsel, *Sweat v. Rickards,* 712 F. App'x 769, 777-78 (10th Cir. 2017), and Plaintiff, as a *pro se* litigant, is not an adequate class representative rendering certification of the requested class inappropriate. *See Fymbo v. State Farm Fire and Cas. Co.*, 213 F.3d 1320, 1321. Nor has Plaintiff established the remaining prerequisites outlined in Rule 23(a).

Plaintiff's Motion for Injunctive Relief [Dkt. No. 61] is **DENIED** because Plaintiff has failed to establish a likelihood that he will suffer irreparable harm in the absence of preliminary relief. *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009). Plaintiff has not demonstrated that it is certain, actual and not theoretical that he will be transported back to Pushmataha County's custody and, as a result, suffer physical danger. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).

Plaintiff's Motion for Removal of State Cases [Dkt. No. 64] is **DENIED**. Plaintiff cited 28 U.S.C. §§ 1367, 1369, 1631 and 1443 as his bases for requesting this court assume jurisdiction of his pending, state criminal proceedings. 28 U.S.C. §§ 1367, 1369 and 1631 only apply to civil actions. Concerning 28 U.S.C. § 1443, Plaintiff failed to allege he is being denied any constitutional or statutory right because of his race or that he is being subjected to any racial inequities. *See Johnson v. Mississippi*, 421 U.S. 213, 219 (1975).

### VIII.  Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [Dkt. No. 57] is **GRANTED**.

**IT IS HEREBY ORDERED** that:

1. Plaintiff's retaliation claim is **DISIMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

2. Plaintiff's remaining § 1983 claims against Defendants Pushmataha County Municipal District, BJ Hedgecock and Amanda Roden are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6);

3. This dismissal shall count as a "prior occasion" or "strike," pursuant to 28 U.S.C. § 1915(g);

4. Plaintiff's Motion to Expunge [Dkt. No. 45], Motion for Default Judgment [Dkt. No. 54], Motion for Appointment of Counsel and Class [Dkt. No. 60], Motion for Injunctive Relief [Dkt. No. 61] and Motion for Removal of State Cases [Dkt. No. 64] are **DENIED;** and

5. A separate judgment of dismissal shall be entered in favor of Defendants and against Plaintiff.

Dated this 24th day of March, 2025.

*Ronald A. White*

**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**